**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LORENZO MARTINEZ**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FIREFLIES.AI CORP**.,<br><br>Defendant. | Case No.: 1:26-cv-03512<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lorenzo Martinez (hereinafter "Plaintiff") brings this class action against Defendant Fireflies.AI Corp. ("Defendant" or "Fireflies") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiff's allegations regarding his own experiences are based on personal knowledge. All other allegations are based on information and belief, formed through Plaintiff's Counsel's reasonable investigation:

### I.  NATURE OF THE CASE

1.  This Class Action stems from Fireflies' collection, possession, and retention of Plaintiff's and Class members' biometric data. This data includes retention of voiceprints, without the notice, written consent, and statutory safeguards required by BIPA.

2.  Fireflies is an artificial intelligence assistant that automatically joins virtual meetings conducted through platforms such as Microsoft Teams, Zoom, and Google Meet.

3.  When enabled by a meeting host, the Fireflies assistant records, analyzes, transcribes, and stores the voiceprints of all participants in the meeting, including individuals who

have not created Fireflies accounts, agreed to Fireflies' Terms of Service, or provided any form of written consent authorizing the collection of their biometric data.

4.      Fireflies markets that their product explicitly provides "Speaker Recognition" and that product/software will identify different speakers in meetings and audio files. This function clearly and necessarily involves analyzing the unique vocal characteristics of participants in a meeting and creates a template of those characteristics so that the "assistant" can recognize those characteristics to identify and distinguish between the participants of a meeting or audio vile.[1]

5.      Voiceprints are expressly defined as a biometric identifier pursuant to BIPA. 740 ILCS 14/10.

6.      The voiceprints that Fireflies collects qualify as biometric data subject to BIPA's protections, and for good reason. Banks and financial organizations often use voiceprints to authenticate individuals' identities when accessing restricted personal or financial information. Unlike passwords, which can be changed if stolen by hackers, biometric identifiers like voiceprints cannot be changed. Thus, individuals whose voiceprints are stolen or compromised are at increased risk of identity theft and fraud. Accordingly, BIPA §§ 15(a) and 15(b) require that private entities notify, and obtain informed consent from, individuals before collecting their voiceprints, and establish clear written policies that are made available to the public.

7.      Fireflies collected and stored Plaintiff's and Class members' voiceprints without complying with BIPA §§ 15(a) or 15(b).

8.      BIPA is a well-known statute, as are its requirements regarding collection and use of voice prints, as such, Defendant's violations of BIPA were reckless and/or intentional.

---

[1] *Fireflies.ai Notetaker, AI Meeting Assistant Platform*, Fireflies.ai, https://fireflies.ai/ (last visited Mar. 23, 2026)

9.      As a result, Plaintiff and members of the Class are entitled to statutory damages and injunctive relief. Defendant must compensate Plaintiff and members of the Class for its unauthorized collection of their sensitive data, and it must permanently delete that data to ensure Plaintiff and Class members are not subject to fraud or identity theft.

## II.      PARTIES

### *Plaintiff Lorenzo Martinez*

10.      Plaintiff Martinez is a citizen and resident of Chicago, Illinois, and has resided in Illinois at all times relevant to this Complaint. Plaintiff Martinez works for Summit HQ and has attended several virtual meetings where Fireflies was being used.

11.      During the aforementioned periods of time, Fireflies recorded Plaintiff's voice, analyzed his vocal characteristics to distinguish him as a unique speaker, and generated transcripts attributing statements to Mr. Martinez, thereby capturing his voiceprint. This collection of Mr. Martinez's voiceprint occurred in Illinois through a device in Illinois, and Fireflies' failure to obtain Mr. Martinez's consent to the collection and retention of his biometric data, by necessity, also occurred in Illinois.

12.      Plaintiff never created a Fireflies account, never agreed to Fireflies' Terms of Service, and never executed any written release authorizing Fireflies to collect, store, or utilize his biometric data. Fireflies' Terms of Service apply only to individuals who affirmatively click "I Agree" to those Terms of Service, register for an account, or otherwise access the Services as users or account owners. Plaintiff did none of those things.[2]

---

[2] *Terms of Service*, Fireflies.ai, https://fireflies.ai/terms-of-service (last visited Mar. 23, 2026)

***Defendant Fireflies.AI Corp***

13. Fireflies.AI Corp. is a corporation organized under the laws of the State of Delaware with its principal place of business in California.

14. Upon information and belief, Defendant's principal place of business is located at 5424 Sunol Blvd 10 531, Pleasanton, CA 94566.

### III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this action is a class action in which the proposed Class exceeds 100 members, minimal diversity exists, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Defendant. In cases involving Internet websites, courts have found jurisdiction proper where a defendant accepts orders and payments from forum residents through its website, and the plaintiff's claims arise from those transactions. *See TY, Inc. v. Sullivan*, No. 01-cv-1604, 2002 WL 500663, at *1 (N.D. Ill. Mar. 12, 2002). Upon information and belief, Defendant accepted orders and payments from Illinois residents whose accounts list Illinois addresses. Plaintiff was recorded through one such Fireflies account, and his claims arise from this forum-related conduct.

17. Defendant has additional contacts with Illinois that support jurisdiction. Defendant purposefully availed itself of the privilege of conducting business in Illinois by offering and operating an AI meeting recording and transcription service it knew, or should have known, would be used to record and analyze the voices of individuals located in Illinois. Defendant's services are used by more than 500,000 businesses and organizations and over 20,000,000 individuals, many of whom are located in Illinois. Defendant is aware of its Illinois user base because it markets its

services nationwide, including in Illinois, and requires subscribers to provide billing addresses, many of which are Illinois addresses.[3]

18. Moreover, Defendant also operates important business functions in Illinois. Fireflies has posted job positions based in Illinois as recently as March 21, 2026.[4]

19. Defendant's contacts with Illinois are not random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Rather, they proximately result from actions that Defendant itself directed toward Illinois, including marketing its services to Illinois individuals and organizations, contracting with Illinois subscribers, providing meeting transcription services and collecting biometric data in Illinois meetings, and placing key personnel in Illinois.

20. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction here and a substantial part of the events or omissions giving rise to Plaintiff's claims, including the deployment and operation of Defendant's biometric data collection software, occurred in this District.

21. If Defendant disputes personal jurisdiction, Plaintiff requests limited jurisdictional discovery concerning Defendant's Illinois directed activities, including the collection of biometric data from Plaintiff and other individuals in Illinois, the volume of meetings involving Illinois participants, Defendant's Illinois customers, and Defendant's data collection and storage practices.

---

[3] Edidiong Ekong, *Fireflies Reaches $1 Billion Valuation, Partners with Perplexity to Bring Real-Time Web Search to Meetings*, Fireflies.ai Blog (June 12, 2025), https://fireflies.ai/blog/fireflies-1-billion-valuation/ (last visited Mar. 23, 2026).

[4] *Product Evangelist – Community & Enablement*, Recruit.net, https://www.recruit.net/job/product-evangelist-community-enablement-jobs/BC681836D2995B43 (last visited Mar. 23, 2026)

## IV.    FACTUAL ALLEGATIONS

### A. Illinois's Strong Stance on Protection of Biometric Information

22.    BIPA provides valuable privacy rights, protections, and benefits to citizens of Illinois.

23.    Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology.

24.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

25.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

6

26. Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

27. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information."

See 740 ILCS 14/15(b).

28. Biometric identifiers include "retina or iris scan, fingerprint, **voiceprint**, or scan of hand or face geometry." See 740 ILCS 14/10 (emphasis added). Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

29. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. See, e.g., 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See*, 740 ILCS 14/15(d)(1).

30. BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

31. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

32. BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

33. Plaintiff and Class Members, like the Illinois legislature, recognize how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**B. Fireflies Collects and Possesses Voiceprints of Plaintiff and Class Members**

34. Defendant's Privacy Policy states that it collects and processes "meeting and call details" and "may use voice recordings to extract or generate data about participants' voice characteristics," and that its Services provide voice functionality.[5]

35. Fireflies' Terms of Service further confirms that Defendant records and stores meeting recordings when enabled and retains such recordings within its systems. The Terms of Service state that "we may otherwise collect certain information about you when you access or use our Services".[6]

36. To generate transcripts and related outputs, Fireflies processes audio data and associates it with individual speakers, resulting in the collection and retention of voice derived identifiers that can be used to identify specific individuals. In other words, Fireflies collects and processes voiceprints ("Speaker Data"), which qualify as biometric identifiers under BIPA. Fireflies did so in the meetings Plaintiff attended, collecting Speaker Data that can be used to identify Plaintiff and was used to identify him in those meetings.

37. Fireflies' data storage guidelines confirm that the voiceprints it collects and stores, which are derivatives of audio recordings, are associated with meeting participants' emails and names. Defendant's website states: "We collect and store user content and user metadata," including "User content" such as "Transcription[s], Summaries, Audio and video recordings, AskFred chats, Soundbites, and any derivatives of such," and "User metadata" including "Calendar metadata, meeting participants' emails and names, usage logs, and user settings/configuration."

---

[5] *Fireflies.ai Privacy Policy*, Fireflies.ai Corp., https://fireflies.ai/privacy_policy.pdf (last visited Mar. 23, 2026).
[6] *Fireflies.ai Terms of Service*, Fireflies.ai, https://fireflies.ai/terms-of-service (last visited Mar. 23, 2026)

Accordingly, in the meetings described, Fireflies associated Plaintiff's Speaker Data with his email and name and stored that data together.[7]

38.    Fireflies' Privacy Policy further states that they "store personal information associated with your account for as long as your account remains active."[8]

39.    Fireflies collected and possessed Plaintiff's and Class members' voiceprints while they were physically present in Illinois.

**C. Fireflies has Failed to Comply with BIPA.**

40.    Fireflies did not obtain Plaintiff's consent before collecting his biometric data, including his voiceprints. As a matter of uniform policy, Fireflies' transcription service does not obtain written consent from any meeting participants prior to collecting their biometric data.

41.    Fireflies did not inform Plaintiff, in writing or otherwise, that it was collecting his biometric data during the meetings described above. Although Fireflies' software may indicate its presence in a meeting, it does not disclose that it is capturing, collecting, or processing participants' voiceprints or other biometric identifiers. Nor does it provide any notice regarding the nature, purpose, or scope of such collection.

42.    Fireflies did not inform Plaintiff of the purpose or duration of the collection of his biometric data. Nor does Fireflies inform any meeting participants of the purpose or duration of biometric data collection or storage (given that Fireflies does not even inform meeting participants that it is collecting biometric data in the first place).

---

[7] *Learn About Data Storage and Transfer*, Fireflies.ai Help Center (Jan. 20, 2026), https://guide.fireflies.ai/articles/9596505232-learn-about-data-storage-and-transfer (last visited Mar. 23, 2026).

[8] *Fireflies.ai Privacy Policy § Data Retention*, Fireflies.ai Corp., https://fireflies.ai/privacy-policy#data-retention (last visited Mar. 23, 2026).

43. Prior to collecting Plaintiff's biometric data, Defendant failed to develop, implement, or make publicly available a written policy establishing a retention schedule and guidelines for the permanent destruction of biometric data, as required by BIPA § 15(a).

44. Defendant likewise failed to disclose any such retention or destruction practices to Plaintiff or the public before collecting his biometric identifiers

45. Defendant has negligently, recklessly, and intentionally violated BIPA.

46. Illinois enacted BIPA in 2008. Since then, the statute's requirements have been widely publicized through numerous articles, regulatory guidance, and a substantial history of litigation. Considering this extensive public attention and enforcement activity, Defendant knew or, at a minimum, should have known that its biometric data collection practices did not comply with BIPA.

47. Fireflies' Privacy Policy expressly addresses compliance with a range of domestic privacy laws, including California consumer privacy laws and the data privacy frameworks of Iowa, Maryland, Texas, and Virginia, but they do not address compliance with BIPA.

48. No amount of time or money can compensate Plaintiff if his biometric data is compromised by the lax procedures through which Fireflies captured, stored, used, and disseminated Plaintiff's and other similarly-situated individuals' biometrics, and Plaintiff would not have provided his biometric data to Fireflies if he had known that it would retain such information for an indefinite period of time without his consent.

49. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in

11

order to qualify as "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

50. As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

51. Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric privacy rights, as created by BIPA.

52. Fireflies disregarded these obligations and instead unlawfully captured, collected, stored, and used individual's biometric identifiers and information, without ever receiving those individual's informed written consent as required by BIPA.

53. Fireflies also did not publish a BIPA-mandated data retention policy nor adequately disclosed the purposes for their collection of biometric data.

54. Plaintiff understands that Fireflies uses a number of different artificial intelligence models, including Large Language Models like GPT4.0, in processing user data, including voiceprints. Fireflies does not disclose, and therefore Plaintiff is not certain, whether Fireflies supplies copies of his Speaker Data to any of these artificial intelligence models. Nevertheless, based on information provided by the company and other outside articles, he believes that Fireflies may provide at least some Speaker Data, including potentially his and/or the Class Members' Speaker Data, to third parties in using those third parties' artificial intelligence models.[9] Those models may use Plaintiff and/or the Class Members' Speaker Data in training those models, which potentially exposes Plaintiff and/or the Class Members' Speaker Data for use by other third parties.

---

[9] Fireflies.ai, *Connect Fireflies with ChatGPT and unlock the full power of your meetings*, YouTube, (Aug. 4, 2025) *available at* https://www.youtube.com/watch?v=OH3SnoAT5HU

55.     Nor is Plaintiff and the putative Class told to whom else Fireflies currently discloses their Speaker Data to, or what might happen to their biometric data in the event of a buyout, merger, or bankruptcy.

56.     By and through the actions detailed above, Fireflies has not only disregarded the Class's privacy rights, but it has also violated BIPA.

## V.     CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

58.     The Class consists of

> All individuals whose Speaker Data was captured, collected, stored, or otherwise obtained by Fireflies while they were located in the State of Illinois and/or were residents of the State of Illinois during the five years preceding the filing of this action through the present (the "Class"). Excluded from the Class are individuals who agreed to Fireflies' Terms of Service before their Speaker Data was collected.

59.     *Numerosity*: The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant has collected, processed, and stored the Speaker Data of thousands of individuals in Illinois. The exact number of Class members is unknown to Plaintiff but is within Defendant's possession, custody, and control.

60.     *Commonality*: There are also questions of law and fact common to the above-defined Class, such as

    a.   whether Defendant published a compliant BIPA policy before collecting Class members' data;

    b.   whether the data Defendant collects constitutes biometric data under BIPA;

    c.   whether Defendant properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers;

13

d. whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class to collect, capture, or otherwise obtain their biometric identifiers;

e. whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class before capturing, collecting, converting, sharing, storing or using individuals' biometrics;

f. whether Defendant provided a writing disclosing to Plaintiff and the Class the specific purposes for which the biometrics are being collected, stored, and used;

g. whether Defendant provided a writing disclosing to Plaintiff and the Class the length of time for which the biometrics are being collected, stored, and used; and

h. whether Defendant's BIPA violations were negligent, reckless, and/or intentional.

61. *Typicality*: Plaintiff's claims are typical of the claims of the Class because they arise from the same course of conduct by Defendant and are based on the same legal theories. Plaintiff, like all Class members, had his Speaker Data collected, stored, and used by Defendant without the disclosures and written consent required by BIPA.

62. *Adequacy*: Plaintiff and his counsel will fairly and adequately represent the Class. Plaintiff has suffered the same injuries as the members of the Class and has no conflicts of interest with other Class members. Plaintiff has retained counsel who are experienced in class action litigation, including BIPA class actions, and who will prosecute this action vigorously on behalf of the Class.

63. Additionally, The Class also meets the certification requirements of Federal Rule of Civil Procedure 23(b)(3)

64. **_Predominance_**: Questions of law and fact common to Class members predominate over any questions affecting only individual members, given that this case hinges on whether Defendant's uniform practices and policies violate BIPA.

65. **_Superiority_**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual piecemeal litigation would be impracticable and inefficient given the number of Class members and the relatively small value of individual claims. Proceeding as a class action will conserve judicial resources and ensure consistent adjudication of common issues.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of Section 15(a) of BIPA, 740 ILCS 14/15(a)**
**On Behalf of Plaintiff and the Nationwide Class**

66. Plaintiff restates and realleges all the allegations stated above and hereafter as if fully set forth herein.

67. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

68. The Plaintiff's and Class Members' Speaker Data qualify as "biometric identifier[s]" as it is defined in BIPA. _Id_.

69. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. _Id_.

70. Defendant violated BIPA by collecting and possessing Plaintiff's and the Class's Speaker Data at a time when it lacked a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

71.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of Section 15(b) of BIPA, 740 ILCS 14/15(b)**
**On Behalf of Plaintiff and the Nationwide Class**

72.     Plaintiff restates and realleges all of the allegations stated above and hereafter as if fully set forth herein.

73.     BIPA prohibits private entities from collecting biometric identifiers and biometric information without first providing written notice and obtaining a written release. *See* 740 ILCS 14/15(b).

74.     Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

75.     Plaintiff's and the Class's Speaker Data qualify as "biometric identifier[s]" as defined by BIPA. *Id.*

76.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *Id.*

77.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *Id.*

78.     Defendant violated BIPA by collecting and possessing Plaintiff's and the Class's Speaker Data without first: (a) informing them in writing that a biometric identifier or biometric

16

information was being collected or stored; (b) informing them in writing of the specific purpose and length of term for which such biometric identifier or biometric information was being collected, stored, and used; and (c) obtaining a written release authorizing the collection and storage of their biometric data. *Id*. § 14/15(b).

79. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**THIRD CAUSE OF ACTION**
**Violation of Section 15(d) of BIPA, 740 ILCS 14/15(d)**
**On Behalf of Plaintiff and the Nationwide Class**

80. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

82. Defendant fails to comply with this BIPA mandate.

83. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

84. Plaintiff's and the Class's Speaker Data qualify as "biometric identifier[s]" as defined by BIPA. *Id*.

85. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *Id*.

17

86.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *Id*.

87.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *Id*.

88.     Defendant systematically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

89.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

90.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## VII.     PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

91.     WHEREFORE, Plaintiff, on behalf of himself and the Class described above, respectfully demands a jury trial for all claims so triable and requests that this Court grant the following:

18

a. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

b. Designation of Plaintiff as representative of the Class and designation of counsel of record as counsel for the Class;

c. A declaratory judgment that the practices complained of herein are unlawful;

d. An award of statutory damages, injunctive relief, and other relief provided for under the foregoing causes of action as set forth above;

e. An award of attorneys' fees and costs incurred in this action, including expert fees;

f. Pre-judgment and post-judgment interest, as provided by law;

g. A reasonable service award for Plaintiff; and

h. All other legal and equitable relief that this Court deems necessary, just, and proper.

DATED: March 30, 2026                                        Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger (ARDC # 6303726)
William J. Edelman (ARDC # 6332368)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

Mason A. Barney
Tyler J. Bean*
Kennedy M. Brian*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
tbean@sirillp.com
kbrian@sirillp.com

Bryan L. Bleichner*
Philip J. Krzeski*

19

**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, UNIT 1700
Minneapolis, Minnesota 55401
Tel: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

*Attorneys for Plaintiff and the Putative Class*

*\* pro hac vice forthcoming*

20